Robert A. Henry (#015104)
David G. Barker (#024657)
Rachael Peters Pugel (#032626)
SNELL & WILMER L.L.P.
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
Telephone: 602.382.6000
Facsimile: 602.382.6070
E-Mail: bhenry@swlaw.com
        dbarker@swlaw.com
        rpugel@swlaw.com

*Attorneys for Defendants and Counterclaimants*
*1079765 B.C. Limited d/b/a N2 Pack Canada, Inc.,*
*Eric Marciniak, Brendan Pogue, Alex Abellan,*
*and Chakra Cannabis Corp.*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| N2 Packaging Systems, LLC, an Arizona limited liability company, | No. 2:19-cv-02351-NVW |
| Plaintiff, | **DEFENDANTS' ANSWER TO VERIFIED FIRST AMENDED COMPLAINT AND COUNTERCLAIMS** |
| v. | |
| N2 Pack Canada, Inc., an unincorporated fictitious entity; Eric Marciniak, individually; Brendan Pogue, individually; Alejo Abellan aka Alex Abellan, individually; Chakra Cannabis Corp., a Canadian federal corporation; and Does 1-10, inclusive | (The Honorable Neil V. Wake) |
| Defendants. | |
| 1079765 B.C. Limited d/b/a N2 Pack Canada, Inc., a British Columbia entity; Eric Marciniak; Brendan Pogue; Alejo Abellan aka Alex Abellan; Chakra Cannabis Corp., a Canadian federal corporation, | |
| Counterclaimants, | |
| v. | |
| N2 Packaging Systems, LLC, an Arizona limited liability company, | |
| Counterdefendant. | |

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

For their answer to the Verified First Amended Complaint [Doc. 9], Defendants N2 Pack Canada, Inc. ("N2 Pack Canada"), Eric Marciniak, Brendan Pogue, Alex Abellan, and Chakra Cannabis Corp. ("Chakra") (collectively, "Defendants") admit, deny, and allege as follows:

## **Parties and Jurisdiction**

1.      Answering Paragraph 1, Defendants admit only that N2 Packaging Systems, LLC was formed as an Arizona limited liability company on February 4, 2016.  Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations set forth in Paragraph 1 and, accordingly, deny the same.

2.      Answering Paragraph 2, Defendants state that N2 Pack Canada is the d/b/a of 1079765 B.C. Limited, which was incorporated under the laws of British Columbia, Canada on June 17, 2016.  Defendants admit that 1079765 B.C. Limited does business in British Columbia, Canada.  Defendants deny any remaining allegation in Paragraph 2.

3.      Defendants admit the allegations in Paragraph 3.

4.      Defendants admit the allegations in Paragraph 4.

5.      Defendants admit the allegations in Paragraph 5.

6.      Answering Paragraph 6, Defendants admit only that Marciniak, Pogue, and Abellan are directors of 1079765 B.C. Limited d/b/a N2 Pack Canada.  Defendants deny any remaining allegation in Paragraph 6.

7.      Defendants admit the allegations in Paragraph 7.

8.      Answering Paragraph 8, Defendants admit only that Abellan is a director of Chakra.  Defendants deny any remaining allegation in Paragraph 8.

9.      Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in Paragraph 9 and, accordingly, deny the same.

10.     Answering Paragraph 10, Defendants admit only that the N2 Pack Canada Packaging Supply Agreement provides that "Any and all claims, questions or disputes regarding the interpretation, performance and enforceability of this Agreement, the rights

Snell & Wilmer

L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

4816-7090-0648

and remedies of the Parties hereunder, and all related actions or counterclaims shall be initiated and prosecuted in the courts of the state of Arizona located in Phoenix, Maricopa County, Arizona." [*See* Doc. 9-1 at 136 § 20.] Defendants deny any remaining allegation in Paragraph 10.

11. Answering Paragraph 11, Defendants admit only that Plaintiff alleges N2 Canada breached the N2 Pack Canada Packaging Supply Agreement, that the N2 Canada Principals'[1] actions that caused the same, and that N2 Packaging Systems, LLC is enforcing its rights under the N2 Pack Canada Packaging Supply Agreement in response to the same. Defendants deny any wrongdoing, including that they breached the N2 Pack Canada Packaging Supply Agreement. Defendants deny any remaining allegation in Paragraph 11.

12. Answering Paragraph 12, Defendants admit only that the Independent Contractor Agreement provides that "Any and all claims, questions or disputes regarding the interpretation, performance and enforceability of this Agreement, the rights and remedies of the parties hereunder, and all related actions or counterclaims shall be initiated and prosecuted in the courts of the state of Arizona located in Phoenix, Maricopa County, Arizona." [Doc. 9-2 at 5 § 6.] Defendants deny any remaining allegation in Paragraph 12.

13. Answering Paragraph 13, Defendants admit only that Plaintiff alleges Abellan breached the Independent Contractor Agreement, interfered with the N2 Canada Defendants' obligations under the Packaging Supply Agreement, and interfered with Chakra's obligations under the Chakra Packaging Supply Agreement, and that N2 Packaging Systems, LLC is enforcing its rights under the Independent Contractor Agreement and Packaging Supply Agreements in response to the same. Defendants deny any wrongdoing, including that they breached any agreement. Defendants deny any remaining allegation in Paragraph 13.

14. Answering Paragraph 14, Defendants admit only that the Chakra Packaging Supply Agreement provides that "Any and all claims, questions or disputes regarding the

---

[1] The "N2 Canada Principals" are defined in the Verified First Amended Complaint as Marciniak, Pogue, and/or Abellan. [Doc. 9 at ¶ 6.]

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

interpretation, performance and enforceability of this Agreement, the rights and remedies of the parties hereunder, and all related actions or counterclaims shall be initiated and prosecuted in the courts of the state of Arizona located in Phoenix, Maricopa County, Arizona." [Doc. 9-2 at 16 § 21.] Defendants deny any remaining allegation in Paragraph 14.

15. Answering Paragraph 15, Defendants admit only that Plaintiff alleges its separate claims against Chakra and Abellan arise out of Chakra's breach of its obligations under the Chakra Packaging Supply Agreement, Abellan's actions as Chakra's principal officer and/or shareholder that caused the same, and N2 Packaging System, LLC's enforcement of its rights under the Chakra Packaging Supply Agreement in response to the same. Defendants deny any wrongdoing, including that Chakra or Abellan breached the Chakra Packaging Supply Agreement. Defendants deny any remaining allegation in Paragraph 15.

16. Answering Paragraph 16, Defendants deny that Marciniak and Pogue are subject to personal jurisdiction in Arizona. Defendants admit the remaining allegations in Paragraph 16.

17. Defendants deny the allegations in Paragraph 17.

18. Defendants deny the allegations in Paragraph 18.

19. Defendants deny the allegations in Paragraph 19.

**Factual Allegations Relevant to All Claims**

20. Answering Paragraph 20, Defendants admit only that N2 Packaging Systems, LLC purports to be in the business of selling packaging for the distribution of controlled substances in Arizona, the United States, and Internationally. Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations set forth in Paragraph 20 and, accordingly, deny the same.

21. Defendants deny the allegations in Paragraph 21.

22. Defendants deny the allegations in Paragraph 22.

23. Answering Paragraph 23, Defendants admit only that N2 Packaging alleges

4816-7090-0648

in the Verified First Amended Complaint that it owns the following U.S. Patents: U.S. Patent No. 8,863,947; U.S. Patent No. 9,878,821; and U.S. Patent No. 10,124,941. Defendants deny any remaining allegation in Paragraph 23.

24.     Answering Paragraph 24, Defendants admit only that U.S. Patent No. 8,863,947, Application No. 13/233,931, was filed on September 15, 2011 for "Storage preservation and transport for a controlled substance."  Defendants deny any remaining allegation in Paragraph 24.

25.     Answering Paragraph 25, Defendants admit only that the abstract in U.S. Patent No. 8,863,947 states:

> The present application provides a unique process of canning a controlled substance where the cans are hermetically sealed and clearly identified in a number of different ways. The process will begin by inserting a packing and dehumidifying agent, preferably a formed rice cake. The controlled substance is then inserted. In some cases the rice cakes will be eliminated or just a single rice cake will be used on the top or the bottom. If the process of storing the controlled substance in an inert atmosphere is desired, the oxygen in the container is replaced with gaseous nitrogen. After the container has been sealed in the conventional pop-top canning procedure; an identifying scent substance is permanently adhered to the can or label. An internal or external microchip could be used to detect, track and trace the container filled with a controlled substance.

Defendants deny any remaining allegation in Paragraph 25.

26.     Answering Paragraph 26, Defendants admit only that U.S. Patent No. 8,863,947 was issued on October 21, 2014.  Defendants deny any remaining allegation in Paragraph 26.

27.     Answering Paragraph 27, Defendants admit only that U.S. Patent No. 9,878,821, Application No. 14/519,031, was filed on October 20, 2014 for "Container for the storage, preservation, identification, tracking and transport of a federally controlled substance."  Defendants deny any remaining allegation in Paragraph 27.

28.     Answering Paragraph 28, Defendants admit only that the abstract in U.S. Patent No. 9,878,821 states:

> The present application provides a container for storage, preservation, identification, tracking and transport of a federally controlled substance comprising: (a) a one or more piece airtight container having an exterior surface and an interior surface, an upper portion and a lower portion, configured for containing a federally controlled substance; (b) an inner coating liner lining said interior surface of said airtight container; (c) a one

Snell & Wilmer

L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

piece tamper resistant easy open lid affixed to said upper portion of said airtight container; and (d) identifying indicia located on the exterior surface for identifying the contained federally controlled substance contents within said container; wherein said airtight container configured for containing a federally controlled substance, has the atmosphere evacuated and the container filled with an inert gas before the airtight container is hermetically sealed, containing a federally controlled substance inside.

Defendants deny any remaining allegation in Paragraph 28.

29. Answering Paragraph 29, Defendants admit only that U.S. Patent No. 9,878,821 was issued on January 30, 2018. Defendants deny any remaining allegation in Paragraph 29.

30. Answering Paragraph 30, Defendants admit only that U.S. Patent Application No. 15/616483 was filed on June 7, 2017 for "Child resistant and senior friendly can lid." Defendants deny any remaining allegation in Paragraph 30.

31. Answering Paragraph 31, Defendants admit only that the abstract in Patent Application No. 15/616483 states:

The present invention is directed to a can lid that is child resistant, and at the same time senior friendly, and can be initially installed on a can to be removed by an adult, especially a senior adult, and be put back on the can in the same condition where a child could still not be able to easily remove it. The child resistant and senior friendly can lid provided has a replaceable can lid and a locking member, such that when a can is initially opened, it may be readily resealed. The child resistant and senior friendly can lid has tapered, smooth sides to make the lid difficult to grasp and a sealing ledge on the inside surface to grab the seam roll of the upper edge of the can. The lid sealing ledge is relieved in two areas ninety degrees apart leaving a ridge to maintain a seal when the lid is attached to a can. The can lid will be flexible enough to bend for removal by seniors but resistant to removal by children.

Defendants deny any remaining allegation in Paragraph 31.

32. Answering Paragraph 32, Defendants admit only that N2 Packaging purports to own U.S. Patent Publication No. US-2017-0355-495-A1. Defendants deny any remaining allegation in Paragraph 32.

33. Answering Paragraph 33, Defendants admit only that U.S. Patent No. 10,124,941, Application No. 15/882,962, was filed on January 29, 2018 for "Re-sealable container for a controlled substance having a child resistant lid." Defendants deny any remaining allegation in Paragraph 33.

4816-7090-0648

Snell & Wilmer

L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

34.     Answering Paragraph 34, Defendants admit only that the abstract in Patent No. 10,124,941 states:

> Provided is a re-sealable container for storing, preserving, identifying, tracking and transporting a federally controlled substance having a child resistant and senior friendly lid, and a process for identifying and tracking federally controlled substances within the re-sealable containers. The re-sealable federally controlled substance containers include a two-piece child resistant and senior friendly lid and a 2-factor authentication identification tag, as well as a microchip for identifying the container controlled substance contents and tracking the container. Controlled substance contents within the re-sealable containers are optimized for long term storage by removal of the oxygen therein, and the containers and controlled substance contents can be readily identified, detected, tracked and traced after being filled with a federally controlled substance.

Defendants deny any remaining allegation in Paragraph 34.

35.     Answering Paragraph 35, Defendants admit only that U.S. Patent No. 10,124,941 was issued on November 13, 2018.  Defendants deny any remaining allegation in Paragraph 35.

36.     Answering Paragraph 36, Defendants admit only that WIPO International Publication No. WO 2016/069304 lists a filing date of October 19, 2015 and lists as the sole applicant N2 Packaging Systems, LLC.  Defendants deny any remaining allegation in Paragraph 36.

37.     Answering Paragraph 37, Defendants admit only that international patent application number PCT/US2015/05618 lists a filing date of October 19, 2015 and a title of "Container for Federally Controlled Substance."  Defendants deny any remaining allegation in Paragraph 37.

38.     Answering Paragraph 38, Defendants admit only that WIPO publication number WO 2016/069304 states:

> This application provides a unique container for storage, preserving, identifying, tracking and transporting a federally controlled substance and a canning process for federally controlled substances where the cans enamel lined, atmosphere evacuated, inert gas filled, and hermetically sealed, and the federally controlled substance are cleared identified in a number of ways. In particular, the federally controlled substance containers are optimized for long term storage and can be readily detected, tracked and traced when filled with a federally controlled substance.

Defendants deny any remaining allegation in Paragraph 38.

39.     Defendants admit that WO 2016/069304 A1 lists a date of May 6, 2016. Defendants deny any remaining allegation in Paragraph 39.

40.     Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in Paragraph 40 and, accordingly, deny the same.

41.     Answering Paragraph 41, Defendants admit only that N2 Packaging Systems, LLC has a brick-and-mortar store in Twin Falls, Idaho and has an online presence. Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations set forth in Paragraph 41 and, accordingly, deny the same.

42.     Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in Paragraph 42 and, accordingly, deny the same.

43.     Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in Paragraph 43 and, accordingly, deny the same.

44.     Defendants deny the allegations in Paragraph 44.

45.     Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in Paragraph 45 and, accordingly, deny the same.

46.     Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in Paragraph 46 and, accordingly, deny the same.

47.     Answering Paragraph 47, Defendants admit only that in or about early 2017, N2 Packaging Systems, LLC and Abellan discussed entering into a business venture in Canada, whereby Abellan would provide certain services to N2 Packaging Systems, LLC as set forth in the Independent Contractor Agreement. Defendants deny any remaining allegation in Paragraph 47.

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

48.     Answering Paragraph 48, Defendants admit only that the Independent Contractor Agreement sets forth the entire understanding of the parties with respect to the subject matter therein and supersedes all prior agreements, written and oral, between the parties.  [*See* Doc. 9-2 at 6, § 11.]  Defendants deny any remaining allegation in Paragraph 48.

49.     Defendants deny the allegations in Paragraph 49.

50.     Defendants deny the allegations in Paragraph 50.

51.     Answering Paragraph 51, Defendants admit only that the Chakra Packaging Supply Agreement sets forth the entire understanding of the parties with respect to the subject matter therein and supersedes all prior agreements, written and oral, between the parties.  [*See* Doc. 9-2 at 17 § 27.]  Defendants further admit that the Chakra Packaging Supply Agreement has an effective date of June 27, 2017.  Defendants deny any remaining allegation in Paragraph 51.

52.     Defendants deny the allegations in Paragraph 52.

53.     Answering Paragraph 53, Defendants deny that the "Proprietary Process," to the extent it is described in any published patent or patent application, is confidential. Defendants admit only that the Chakra Packaging Supply Agreement states:

> N2 Packaging shall provide to Processor its Packaging Process that utilizes the Proprietary Process on a non-exclusive, revocable license basis, together with the sale of packaging materials in the herein provided minimum required quantities. Processor shall utilize N2 Packaging's Packaging Process that utilizes the Proprietary Process with the provided packaging equipment, on a non-exclusive, revocable license basis solely for Product, together with the purchase of packaging materials from N2 Packaging. N2 Packaging shall have the right to revoke immediately the license to use the Proprietary Process upon breach by Processor of the terms of this Agreement.

[*See* Doc. 9-2 at 9 § 2.]  Defendants deny any remaining allegation in Paragraph 53.

54.     Answering Paragraph 54, Defendants admit only that the Chakra Packaging Supply Agreement provides:

> N2 Packaging owns the Proprietary Process, including all applicable patent(s). Processor shall have no right, title or interest in or to the Proprietary Process, except the limited license to utilize the Proprietary Process pursuant

Snell & Wilmer

L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona  85004-2202
602.382.6000

to and in accordance with this Agreement. Processor shall have no rights under any technology rights, whether patentable or not, or any patents, patent applications, trade secrets or other proprietary rights of N2 Packaging.

[*See* Doc. 9-2 at 13 § 12.1.]  Defendants deny any remaining allegation in Paragraph 54.

55.     Answering Paragraph 55, Defendants admit only that the Chakra Packaging Supply Agreement provides:

N2 Packaging owns the Proprietary Process, including all applicable patent(s). Processor shall have no right, title or interest in or to the Proprietary Process, except the limited license to utilize the Proprietary Process pursuant to and in accordance with this Agreement. Processor shall have no rights under any technology rights, whether patentable or not, or any patents, patent applications, trade secrets or other proprietary rights of N2 Packaging.

[*See id*.]  Defendants deny any remaining allegation in Paragraph 55.

56.     Answering Paragraph 56, Defendants admit only that Abellan communicated to N2 Packaging that it would benefit by working with Marciniak, Pogue, and Stephen Schroeder in Canada.  Defendants deny any remaining allegation in Paragraph 56.

57.     Defendants deny the allegations in Paragraph 57.

58.     Answering Paragraph 58, Defendants admit only that Abellan communicated to N2 Packaging that it would benefit by working with Marciniak, Pogue, and Stephen Schroeder in Canada.  Defendants deny any remaining allegation in Paragraph 58.

59.     Answering Paragraph 59, Defendants deny that the Chakra Packaging Supply Agreement contained a provision requiring exclusivity on the part of N2 Packaging Systems, LLC.  Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations set forth in Paragraph 59 and, accordingly, deny the same.

60.     Answering Paragraph 60, Defendants admit only that N2 Packaging Systems, LLC and N2 Pack Canada engaged in discussions regarding a packaging supply agreement. Defendants further state that the N2 Pack Canada Packaging Supply Agreement sets forth the entire understanding of the parties with respect to the subject matter therein and supersedes all prior agreements, written and oral, between the parties.  [*See* Doc. 9-1 at 137 § 26.]  Defendants deny any remaining allegation in Paragraph 60.

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

4816-7090-0648

Snell & Wilmer

L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

61. Defendants deny the allegations in Paragraph 61.

62. Defendants deny the allegations in Paragraph 62.

63. Defendants admit the allegations in Paragraph 63.

64. Answering Paragraph 64, Defendants admit only that the N2 Pack Canada Packaging Supply Agreement provides:

> Subject to, and in accordance with, the terms and conditions of this Agreement, and in consideration of a one-lime licensing, setup and training fee of Five Thousand and 00/100 Dollars ($5,000.00). N2 Packaging shall provide to Processor its Packaging Process that utilizes the Proprietary Process on a non-exclusive, revocable license basis, together with the sale of packaging materials in the herein provided minimum required quantities. Processor shall utilize N2 Packaging's Packaging Process that utilizes the Proprietary Process with the provided packaging equipment, on a non-exclusive, revocable license basis solely for Product, together with the purchase of packaging materials from N2 Packaging. . . . Further, the labeling of Processor's packaged Product shall include N2 Packaging's logo utilizing N2 Packaging's label template. Processor acknowledges the quality of the Product is material to N2 Packaging's grant to Processor of the license to use, and Processor's use of, the Packaging Process that utilizes the Proprietary Process. Accordingly, Processor shall observe, follow and conform to the N2 Packaging Requirements for Use and Quality Control Specification set forth at Attachment B hereof.

[*See* Doc. 9-1 at 129 § 2.]   Defendants deny any remaining allegation in Paragraph 64.

65. Answering Paragraph 65, Defendants admit only that the N2 Pack Canada Packaging Supply Agreement provides:

> Subject to, and in accordance with, the terms and conditions of this Agreement, and in consideration of a one-lime licensing, setup and training fee of Five Thousand and 00/100 Dollars ($5,000.00). N2 Packaging shall provide to Processor its Packaging Process that utilizes the Proprietary Process on a non-exclusive, revocable license basis, together with the sale of packaging materials in the herein provided minimum required quantities. Processor shall utilize N2 Packaging's Packaging Process that utilizes the Proprietary Process with the provided packaging equipment, on a non-exclusive, revocable license basis solely for Product, together with the purchase of packaging materials from N2 Packaging. . . . Further, the labeling of Processor's packaged Product shall include N2 Packaging's logo utilizing N2 Packaging's label template. Processor acknowledges the quality of the Product is material to N2 Packaging's grant to Processor of the license to use, and Processor's use of, the Packaging Process that utilizes the Proprietary

> Process. Accordingly, Processor shall observe, follow and conform to the N2
> Packaging Requirements for Use and Quality Control Specification set forth
> at Attachment B hereof.

[*See id.*]   Defendants deny any remaining allegation in Paragraph 65.

66.     Answering Paragraph 66, Defendants admit only that N2 Packaging Systems, LLC improperly terminated what the N2 Pack Canada Packaging Supply Agreement refers to as a "Preferred Exclusive Basis" on September 19, 2018.  Defendants deny any remaining allegation in Paragraph 66.

67.     Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in Paragraph 67 and, accordingly, deny the same.

68.     Defendants deny the allegations in Paragraph 68.

69.     Answering Paragraph 69, Defendants admit only that the N2 Pack Canada Packaging Supply Agreement provides:

> N2 Packaging shall provide to Processor its Packaging Process that utilizes
> the Proprietary Process on a non-exclusive, revocable license basis, together
> with the sale of packaging materials in the herein provided minimum
> required quantities. Processor shall utilize N2 Packaging's Packaging
> Process that utilizes the Proprietary Process with the provided packaging
> equipment, on a non-exclusive, revocable license basis solely for Product,
> together with the purchase of packaging materials from N2 Packaging.

[*See* Doc. 9-1 at 129, § 2.]   Defendants deny any remaining allegation in Paragraph 69.

70.     Answering Paragraph 70, Defendants admit only that the N2 Pack Canada Packaging Supply Agreement provides:

> N2 Packaging shall provide to Processor its Packaging Process that utilizes
> the Proprietary Process on a non-exclusive, revocable license basis, together
> with the sale of packaging materials in the herein provided minimum
> required quantities. Processor shall utilize N2 Packaging's Packaging
> Process that utilizes the Proprietary Process with the provided packaging
> equipment, on a non-exclusive, revocable license basis solely for Product,
> together with the purchase of packaging materials from N2 Packaging.

[*See Id.*.]   Defendants deny any remaining allegation in Paragraph 70.

71.     Answering Paragraph 71, Defendants admit only that the N2 Pack Canada

4816-7090-0648

Packaging Supply Agreement provides:

> N2 Packaging owns the Proprietary Process, including an all applicable patent(s). Processor shall have no right, title, or interest in or to the Proprietary Process, except the limited license to utilize the Proprietary Process pursuant to and in accordance with this Agreement.  Processor shall have no rights under any technology rights, whether patentable or not, or any patents, patent applications, trade secret or other proprietary rights of N2 Packaging.  Processor shall not modify or otherwise reverse engineer the Proprietary Process; and shall not seek any intellectual property protection, including, without limitation, any patent relating to or otherwise directed to the manufacture or use of the Proprietary Process in conjunction or in combination with any other product or process utilizing, employing or otherwise applying the Proprietary Process or any portion or derivations thereof.

[*See id.* at 133 § 11.1.]  Defendants deny any remaining allegation in Paragraph 71.

72.  Answering Paragraph 72, Defendants admit only that the N2 Pack Canada Packaging Supply Agreement provides:

> N2 Packaging owns the Proprietary Process, including an all applicable patent(s). Processor shall have no right, title, or interest in or to the Proprietary Process, except the limited license to utilize the Proprietary Process pursuant to and in accordance with this Agreement.  Processor shall have no rights under any technology rights, whether patentable or not, or any patents, patent applications, trade secret or other proprietary rights of N2 Packaging.  Processor shall not modify or otherwise reverse engineer the Proprietary Process; and shall not seek any intellectual property protection, including, without limitation, any patent relating to or otherwise directed to the manufacture or use of the Proprietary Process in conjunction or in combination with any other product or process utilizing, employing or otherwise applying the Proprietary Process or any portion or derivations thereof.

[*See id.*]  Defendants deny any remaining allegation in Paragraph 72.

73.  Answering Paragraph 73, Defendants admit only that N2 Pack Canada's use of the Proprietary Process was governed by the terms of the N2 Pack Canada Packaging Supply Agreement—to the extent any such terms are valid and enforceable, which Defendants do not admit—and any applicable law.  Defendants deny any remaining allegation in Paragraph 73.

74.  Answering Paragraph 74, Defendants admit only that the N2 Pack Canada

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona  85004-2202
602.382.6000

Packaging Supply Agreement provides:

> Processor shall execute such documentation and take other steps requested by N2 Packaging to maintain, establish, and protect N2 Packaging's ownership interests in the Proprietary Process, and Processor shall not take any actions inconsistent with such ownership by N2 Packaging.

[*See* Doc. 9-1 at 133 § 11.1.] Defendants further admit that the N2 Pack Canada Packaging Supply Agreement contains a mutual confidentiality clause and provides that "Each party shall exercise the same care and measures to protect the Confidential Information of the other party as it uses to protect its own confidential information and trade secrets, provided, however, that in no event will the measures take be less than reasonable." [*See id.*, 133–34 §§ 11.2–11.3.] Defendants deny any remaining allegation in Paragraph 74.

75.     Answering Paragraph 75, Defendants admit only that Section 10 of the N2 Pack Canada Packaging Supply Agreement provides:

> During the term of this Agreement, Processor: (i) shall not utilize a packaging line of any type to package Product utilizing N2 Packaging's Packaging Process; and (ii) shall not utilize N2 Packaging's Proprietary Process or the packaging equipment for any purpose or reason other than to package its Product . . . N2 Packaging shall have the right to terminate this Agreement immediately upon breach by Processor of the terms of this Agreement, and specifically in this Section, and may seek injunctive relief upon any violation or threatened violation of the terms of this Section, in addition to all other rights and remedies available at law or in equity, without having to post a bond or other security.

[*See* Doc. 9-1 at 132 § 10.] Defendants deny any remaining allegation in Paragraph 75.

76.     Answering Paragraph 76, Defendants admit only that Section 11.1 of the N2 Pack Canada Packaging Supply Agreement provides:

> N2 Packaging owns the Proprietary Process, including an all applicable patent(s). Processor shall have no right, title, or interest in or to the Proprietary Process, except the limited license to utilize the Proprietary Process pursuant to and in accordance with this Agreement.  Processor shall have no rights under any technology rights, whether patentable or not, or any patents, patent applications, trade secret or other proprietary rights of N2 Packaging.  Processor shall not modify or otherwise reverse engineer the Proprietary Process; and shall not seek any intellectual property protection, including, without limitation, any patent relating to or otherwise directed to the manufacture or use of the Proprietary Process in conjunction or in combination with any other product or process utilizing, employing or

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

Snell & Wilmer

L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

otherwise applying the Proprietary Process or any portion or derivations thereof. Processor shall execute such documentation and take other steps requested by N2 Packaging to maintain, establish, and protect N2 Packaging's ownership interests in the Proprietary Process, and Processor shall not take any actions inconsistent with such ownership by N2 Packaging. N2 Packaging shall have the right to terminate this Agreement immediately upon breach by Processor of the terms of this Agreement, and specifically this Section, and may seek injunctive relief upon any violation or threatened violation of the terms of this Section, in addition to all other rights and remedies available at law or in equity, without having to post a bond or other security.

[*See id.* at 133 § 11.1.] Defendants deny any remaining allegation in Paragraph 76.

77.    Answering Paragraph 77, Defendants admit only that Section 11.2 of the N2 Pack Canada Packaging Supply Agreement provides:

The Confidential Information received by a party (the "Receiving Party") from the other party (the "Disclosing Party") shall not be disclosed by the Receiving Party to any Third Party without the express written consent of the Disclosing Party; and shall not be used by the Receiving Party for any purposes other than those contemplated by this Agreement.

[*See id.* at 133–34 § 11.2.] Defendants deny any remaining allegation in Paragraph 77.

78.    Defendants deny the allegations in Paragraph 78.

79.    Defendants deny the allegations in Paragraph 79.

80.    Defendants deny the allegations in Paragraph 80.

81.    Defendants deny the allegations in Paragraph 81.

82.    Answering Paragraph 82, Defendants admit that Truro Herbal Co. became a licensed producer of cannabis in Canada in June of 2019.  Defendants deny any remaining allegation in Paragraph 82.

83.    Answering Paragraph 83, Defendants admit only that in or about early 2018, Truro Herbal Co. placed an order through N2 Pack Canada related to the N2 Pack Canada Packaging Supply Agreement.  Defendants deny any remaining allegation in Paragraph 83.

84.    Answering Paragraph 84, Defendants admit only that in or about early 2018, Truro Herbal Co. placed an order through N2 Pack Canada related to the N2 Pack Canada Packaging Supply Agreement.  Defendants deny any remaining allegation in Paragraph 84.

85.     Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in Paragraph 85 and, accordingly, deny the same.

86.     Defendants deny the allegations set forth in Paragraph 86.

87.     Defendants deny the allegations set forth in Paragraph 87.

88.     Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in Paragraph 88 and, accordingly, deny the same.

89.     Defendants deny the allegations set forth in Paragraph 89.

90.     Defendants deny the allegations set forth in Paragraph 90.

91.     Defendants deny the allegations set forth in Paragraph 91.

92.     Defendants deny the allegations set forth in Paragraph 92.

93.     Defendants deny the allegations set forth in Paragraph 93.

94.     Defendants deny the allegations set forth in Paragraph 94.

95.     Defendants deny the allegations set forth in Paragraph 95.

96.     Defendants deny the allegations set forth in Paragraph 96.

97.     Defendants deny the allegations set forth in Paragraph 97.

98.     Defendants deny the allegations set forth in Paragraph 98.

99.     Answering Paragraph 99, Defendants admit only that on January 15, 2019, Leafly published an article identifying Marciniak as the Vice President of Nitrotin regarding Nitrotin and the Lift Expo.  Defendants deny any remaining allegation in Paragraph 99.

100.    Answering Paragraph 100, Defendants admit only that the article stated:

Nitrotin is a canning company for cannabis, keeping buds fresh till you are ready to crack a green one.  Just like a can of tuna, Nitrotin comes with a pull tab, an extraordinary shelf life and is 100% odour proof said Nitrotin Vice President Eric Marciniak. It is also highly childproof, tamper evident, and 100% recyclable he said. The company uses a drop of liquid nitrogen to push all of the oxygen out of the can before sealing it. Keeping the cannabis in an anaerobic environment means it won't lose flavour, terpenes or its freshness over time said Marciniak. This is a similar process to how beer, wine and water are kept fresh in their bottles he added.

Snell & Wilmer

L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

Defendants deny any remaining allegation in Paragraph 100.

101.    Defendants deny the allegations in Paragraph 101.

102.    Defendants deny the allegations in Paragraph 102.

103.    Defendants deny the allegations in Paragraph 103.

104.    Defendants deny the allegations in Paragraph 104.

105.    Answering Paragraph 105, Defendants admit only that Exhibit G is a true and accurate copy of Nitrotin's "home" page as of January 16, 2019.  Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations set forth in Paragraph 105 and, accordingly, deny the same.

106.    Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations set forth in Paragraph 106 and, accordingly, deny the same.

107.    Answering Paragraph 107, Defendants admit only that both Exhibit G and Exhibit H state:

> Our patented process of packaging controlled substances in a hermetically sealed container with a modified atmosphere greatly extends the shelf life of any contents. Our modified seamer hermetically seals each can after it's flushed with liquid nitrogen with an easy to open pop-top lid to create an air-tight and completely odorless package—that is, until you pop the lid and inhale the ripe, harvest-fresh aroma.

Defendants deny any remaining allegation in Paragraph 107.

108.    Answering Paragraph 108, Defendants admit only that both Exhibit G and Exhibit H state:

> One of the greatest advantages that nitrogen packing achieves is the ease of implementation. Our system is designed for companies to quickly make a transition to a more efficient and all around higher quality packaging system.

Defendants deny any remaining allegation in Paragraph 108.

109.    Answering Paragraph 109, Defendants admit only that Exhibit G, under the title "What Sets Us Apart," provides six categories including "freshness," "shelf-life," "preservation," "store & transport," "branding," and "tracking."  Defendants further admit

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

4816-7090-0648

that Exhibit H has six boxes reading "fresher in the can," "sustainable packaging," "shelf life," "branding," "inventory control," and "tracking."   Defendants deny any remaining allegation in Paragraph 109.

110.   Defendants deny the allegations in Paragraph 110.

111.   Defendants deny the allegations in Paragraph 111.

112.   Defendants deny the allegations in Paragraph 112.

113.   Defendants deny the allegations in Paragraph 113.

114.   Defendants deny the allegations in Paragraph 114.

115.   Defendants deny the allegations in Paragraph 115.

116.   Defendants deny the allegations in Paragraph 116.

117.   Defendants deny the allegations in Paragraph 117.

## Count One

### (Breach of Contract)

### (against N2 Canada Defendants)

118.   Answering Paragraph 118, Defendants incorporate their responses to the preceding Paragraphs.

119.   Answering Paragraph 119, Defendants admit only that N2 Packaging Systems, LLC and N2 Pack Canada entered into the N2 Pack Canada Packaging Supply Agreement.  Defendants deny any remaining allegation in Paragraph 119.

120.   Answering Paragraph 120, Defendants admit only that Section 10 of the N2 Pack Canada Packaging Supply Agreement provides:

> During the term of this Agreement, Processor: (i) shall not utilize a packaging line of any type to package Product utilizing N2 Packaging's Packaging Process; and (ii) shall not utilize N2 Packaging's Proprietary Process or the packaging equipment for any purpose or reason other than to package its Product.

[*See* Doc. 9-1 at 132 § 10.]  Defendants deny any remaining allegation in Paragraph 120.

121.   Defendants deny the allegations in Paragraph 121.

122.   Defendants deny the allegations in Paragraph 122.

123.   Defendants deny the allegations in Paragraph 123.

Snell & Wilmer

L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

124.    Answering Paragraph 124, Defendants admit only that on January 29, 2019 N2 Packaging Systems, LLC sent N2 Pack Canada, Marciniak, Pogue, and Abellan a cease and desist letter in which N2 Packaging Systems, LLC stated, among other things, that it was "invok[ing] its rights under Section 11(1) of the Agreement" and "demand[ing] that N2 Canada 'execute such documentation and take other steps requested by N2 Packaging to maintain, establish and protect N2 Packaging's ownership interest in the Proprietary Process.'" Defendants further admit that N2 Packaging Systems, LLC also sent a cease and desist letter to Nitrotin, Inc., Brent MacNeil, Lenard Walser, Pogue, and Marciniak on January 29, 2019.  Defendants deny any remaining allegation in Paragraph 124.

125.    Defendants deny the allegations in Paragraph 125.

126.    Defendants deny the allegations in Paragraph 126.

127.    Defendants deny the allegations in Paragraph 127.

128.    Defendants deny the allegations in Paragraph 128.

129.    Defendants deny the allegations in Paragraph 129.

### Count Two

### (Breach of Contract)

### (against Abellan)

130.    Answering Paragraph 130, Defendants incorporate their responses to the preceding Paragraphs.

131.    Defendants admit the allegations in Paragraph 131.

132.    Answering Paragraph 132, Defendants admit only that the Independent Contractor Agreement provides:

> Contractor shall have no right, title or interest in or to the Proprietary Process, any rights any technology rights, whether patentable or not, or any patents, patent applications, trade secrets or other proprietary rights of N2 Packaging. Contractor shall not modify or otherwise reverse engineer the Proprietary Process. Contractor shall not seek any intellectual property protection, including, without limitation, any patent relating to or otherwise directed to the manufacture or use of the Proprietary Process. Contractor shall execute such documentation and other steps requested by N2 Packaging to maintain, establish and protect N2 Packaging's ownership interests in the proprietary

Snell & Wilmer

L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

Process, and Contractor shall not take any actions inconsistent with such ownership by N2 Packaging . . .

[*See* Doc. 9-2 at 3 § 2.a.]  Defendants deny any remaining allegation in Paragraph 132.

133.   Defendants deny the allegations in Paragraph 133.

134.   Defendants deny the allegations in Paragraph 134.

135.   Answering Paragraph 135, Defendants admit only that the Independent Contractor Agreement provides:

Contractor shall maintain the Proprietary Information as completely confidential and secret at all times; and shall not, at any time, either during or subsequent to the business relationship with N2 Packaging, directly or indirectly, use, disseminate, appropriate, disclose or divulge any Proprietary Information to any third party entity, or individual, unless authorized or directed to do so by N2 Packaging, or required to do so by a court or other governmental entity acting with the force of law.

[*See* Doc. 9-2 at 4 § 2.c.]  Defendants deny any remaining allegation in Paragraph 135.

136.   Defendants deny the allegations in Paragraph 136.

137.   Answering Paragraph 137, Defendants admit only that the Independent Contractor Agreement provides:

Contractor shall not use the Proprietary Information: (a) to provide any services to or on behalf of any person or entity, either as independent contractor, consultant or employee; or (b) to engage or become interested (as owner, stockholder, partner, director, officer, consultant, member or creditor) in any business or operation directly or indirectly competitive to N2 Packaging.

[*See* Doc. 9-2 at 4 § 2.d.]  Defendants deny any remaining allegation in Paragraph 137.

138.   Defendants deny the allegations in Paragraph 138.

139.   Defendants deny the allegations in Paragraph 139.

140.   Defendants deny the allegations in Paragraph 140.

141.   Defendants deny the allegations in Paragraph 141.

## **Count Three**

### **(Breach of Contract)**

### **(against Chakra)**

142.   Answering Paragraph 142, Defendants incorporate their responses to the

4816-7090-0648

preceding Paragraphs.

143.    Defendants admit the allegations in Paragraph 143.

144.    Answering Paragraph 144, Defendants admit only that the Chakra Packaging Supply Agreement provides:

> During the term of this Agreement, Processor: (i) shall not utilize a packaging line of any Type to package Product utilizing N2 Packaging's Packaging Process; and (ii) shall not utilize N2 Packaging's Proprietary Process or the packaging equipment, inclusive of the standard "25-30 cans per minute" Mini-Seamer and Nitrogen Inerter, for any purpose or reason other than to package its Product.

[*See* Doc. 9-2 at 12–13 § 11.] Defendants deny any remaining allegation in Paragraph 144.

145.    Defendants deny the allegations in Paragraph 145.

146.    Answering Paragraph 146, Defendants admit only that the Chakra Packaging Supply Agreement provides:

> N2 Packaging owns the Proprietary Process, including all applicable patent(s). Processor shall have no right, title or interest in or to the Proprietary Process, except the limited license to utilize the Proprietary Process pursuant to and in accordance with this Agreement. Processor shall have no rights under any technology rights, whether patentable or not, or any patents, patent applications, trade secrets or other proprietary rights of N2 Packaging. Processor shall not modify or otherwise reverse engineer the Proprietary Process; and shall not seek any intellectual property protection, including, without limitation, any patent relating to or otherwise directed to the manufacture or use of the Proprietary Process in conjunction or in combination with any other produce or process utilizing, employing or otherwise applying the Proprietary Process or any portion or derivations thereof. Processor shall execute such documentation and other steps requested by N2 Packaging to maintain, establish and protect N2 Packaging's ownership interests in the proprietary Process, and Processor shall not take any actions inconsistent with such ownership by N2 Packaging.

[*See id.* at 13 § 12.1.] Defendants deny any remaining allegation in Paragraph 146.

147.    Defendants deny the allegations in Paragraph 147.

148.    Answering Paragraph 148, Defendants admit only that the Chakra Packaging Supply Agreement provides:

> The Confidential information received by a party (the "Receiving Party") from the other party (the "Disclosing Party") shall not be disclosed by the Receiving Party to any Third Party without the express written consent of the

Snell & Wilmer

L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

Disclosing Party; and shall not be used by the Receiving Party for purposes other than those contemplated by this Agreement.

[*See id.* at 13–14 § 12.2.]  Defendants deny any remaining allegation in Paragraph 148.

149.    Defendants deny the allegations in Paragraph 149.

150.    Defendants deny the allegations in Paragraph 150.

151.    Defendants deny the allegations in Paragraph 151.

152.    Defendants deny the allegations in Paragraph 152.

## Count Four

### (Breach of Implied Covenant of Good Faith and Fair Dealing)

### (against all Defendants)

153.    Answering Paragraph 153, Defendants incorporate their responses to the preceding Paragraphs.

154.    Answering Paragraph 154, Defendants admit only that the covenant of good faith and fair dealing is implied in every valid and enforceable contract.  Defendants deny any remaining allegation in Paragraph 154.

155.    Answering Paragraph 155, Defendants admit only that the Independent Contractor Agreement, Chakra Packaging Supply Agreement, and N2 Pack Canada Packaging Supply Agreement set forth the entire understanding of the parties with respect to the subject matter thereof and speak for themselves.  Defendants deny any remaining allegation in Paragraph 155.

156.    Defendants deny the allegations in Paragraph 156.

157.    Defendants deny the allegations in Paragraph 157.

158.    Defendants deny the allegations in Paragraph 158.

159.    Defendants deny the allegations in Paragraph 159.

## Count Five

### (Tortious Interference with Contract)

### (against Abellan)

160.    Answering Paragraph 160, Defendants incorporate their responses to the

Snell & Wilmer

L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona  85004-2202
602.382.6000

preceding Paragraphs.

161.    Defendants admit the allegations in Paragraph 161.

162.    Answering Paragraph 162, Defendants admit only that Abellan is a director of Chakra and N2 Pack Canada, and that Abellan was aware of the Chakra Packaging Supply Agreement and N2 Pack Canada Packaging Supply Agreement.  Defendants deny any remaining allegation in Paragraph 162.

163.    Defendants deny the allegations in Paragraph 163.

164.    Defendants deny the allegations in Paragraph 164.

165.    Defendants deny the allegations in Paragraph 165.

166.    Defendants deny the allegations in Paragraph 166.

## Count Six

## (Fraud in the Inducement)

## (against Abellan)

167.    Answering Paragraph 167, Defendants incorporate their responses to the preceding Paragraphs.

168.    Defendants deny the allegations in Paragraph 168.

169.    Defendants deny the allegations in Paragraph 169.

170.    Answering Paragraph 170, Defendants admit only that the Chakra Packaging Supply Agreement sets forth the entire understanding of the parties with respect to the subject matter thereof and supersedes all prior agreements, written or oral, between the parties.  [*See* Doc. 9-2 at 17 § 27.]  Defendants deny any remaining allegation in Paragraph 170.

171.    Answering Paragraph 171, Defendants admit only that the Chakra Packaging Supply Agreement sets forth the entire understanding of the parties with respect to the subject matter thereof and supersedes all prior agreements, written or oral, between the parties.  [*See id.*]  Defendants further state that the Chakra Packaging Supply Agreement speaks for itself.  Defendants deny any remaining allegation in Paragraph 171.

172.    Defendants deny the allegations in Paragraph 172.

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

4816-7090-0648

173.   Defendants deny the allegations in Paragraph 173.

174.   Defendants deny the allegations in Paragraph 174.

175.   Defendants deny the allegations in Paragraph 175.

176.   Defendants deny the allegations in Paragraph 176.

177.   Defendants deny the allegations in Paragraph 177.

178.   Defendants deny the allegations in Paragraph 178.

**Count Seven**

**(Fraud in the Inducement)**

**(against N2 Canada Principals)**

179.   Answering Paragraph 179, Defendants incorporate their responses to the preceding Paragraphs.

180.   Answering Paragraph 180, Defendants admit only that Marciniak and Pogue signed the N2 Pack Canada Packaging Supply Agreement on behalf of N2 Pack Canada. Defendants deny any remaining allegation in Paragraph 180.

181.   Defendants deny the allegations in Paragraph 181.

182.   Answering Paragraph 182, Defendants admit only that the N2 Pack Canada Packaging Supply Agreement sets forth the entire understanding of the parties with respect to the subject matter thereof and supersedes all prior agreements, written or oral, between the parties.   [*See* Doc. 9-1 at 137 § 26.]   Defendants deny any remaining allegation in Paragraph 182.

183.   Defendants deny the allegations in Paragraph 183.

184.   Defendants deny the allegations in Paragraph 184.

185.   Defendants deny the allegations in Paragraph 185.

186.   Defendants deny the allegations in Paragraph 186.

187.   Defendants deny the allegations in Paragraph 187.

188.   Defendants deny the allegations in Paragraph 188.

189.   Defendants deny the allegations in Paragraph 189.

**Count Eight**

Snell & Wilmer

L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

4816-7090-0648

Snell & Wilmer

L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

1   **(Alter Ego)**

2   **(against N2 Canada Principals)**

3   190.   Answering Paragraph 190, Defendants incorporate their responses to the

4   preceding Paragraphs.

5   191.   Defendants deny the allegations in Paragraph 191.

6   192.   Defendants deny the allegations in Paragraph 192.

7   193.   Defendants deny the allegations in Paragraph 193.

8   194.   Defendants deny the allegations in Paragraph 194.

9   195.   Defendants deny the allegations in Paragraph 195.

10   196.   Defendants deny the allegations in Paragraph 196.

11   **<u>Count Nine</u>**

12   **(Violation of A.R.S. § 44-1522; Unlawful Practices)**

13   **(against all Defendants)**

14   197.   Answering Paragraph 197, Defendants incorporate their responses to the

15   preceding Paragraphs.

16   198.   Defendants deny the allegations in Paragraph 198.  Defendants further state

17   that Plaintiff has voluntarily dismissed Count Nine.  [*See* Doc. 35 at n. 1.]

18   199.   Defendants deny the allegations in Paragraph 199.  Defendants further state

19   that Plaintiff has voluntarily dismissed Count Nine.  [*See id*.]

20   200.   Defendants deny the allegations in Paragraph 200.  Defendants further state

21   that Plaintiff has voluntarily dismissed Count Nine.  [*See id*.]

22   **<u>Count Ten</u>**

23   **(Punitive Damages)**

24   **(against all Defendants)**

25   201.   Answering Paragraph 201, Defendants incorporate their responses to the

26   preceding Paragraphs.

27   202.   Defendants deny the allegations in Paragraph 202.

28   203.   Defendants deny the allegations in Paragraph 203.

204.    Defendants deny the allegations in the next (unnumbered) paragraph beginning "WHEREFORE," including those allegations contained in the sub-paragraphs a–e thereto.

## GENERAL DENIAL

205.    Defendants deny all allegations in the Verified First Amended Complaint that are not expressly admitted herein.  Defendants deny that Plaintiff is entitled to any relief whatsoever.

## DEFENSES AND AFFIRMATIVE DEFENSES

As separate, alternative, defenses and affirmative defenses, undertaking the burden of proof only as to those defenses deemed affirmative defenses by law, regardless of how such defenses are denominated herein, the Defendants allege as follows:

206.    Marciniak and Pogue are not subject to personal jurisdiction in this forum.

207.    Counts Eight and Ten fail to state any claim upon which relief may be granted.

208.    N2 Packaging's breach of contract claims, to the extent they allege claims for patent infringement, are preempted by federal patent law.

209.    N2 Packaging materially breached the terms of the Independent Contractor Agreement, Chakra Packaging Supply Agreement, and N2 Pack Canada Packaging Supply Agreement before any alleged breach by Defendants occurred.

210.    N2 Packaging failed to mitigate any alleged damages arising from Defendants' alleged breaches of the Independent Contractor Agreement, Chakra Packaging Supply Agreement, and N2 Pack Canada Packaging Supply Agreement.

211.    N2 Packaging has unclean hands.

212.    Before entering the N2 Pack Canada Packaging Supply Agreement, N2 Packaging made a material misrepresentation to N2 Pack Canada regarding N2 Pack Canada's Preferred Exclusive Basis under the N2 Pack Canada Packaging Supply Agreement.

213.    N2 Packaging fraudulently induced N2 Pack Canada to enter into the N2 Pack Canada Packaging Supply Agreement by concealing N2 Packaging's intent to use N2 Pack

4816-7090-0648

Canada for the sole purpose of getting nitrogen legalized for use with Cannabis in Canada; N2 Packaging never intended to honor the Preferred Exclusive Basis under the N2 Pack Canada Packaging Supply Agreement.

214. The Independent Contractor Agreement, Chakra Packaging Supply Agreement, and N2 Pack Canada Packaging Supply Agreement are illegal and against public policy.

215. The confidentiality provisions of the Independent Contractor Agreement [Doc. 9-2 at 2, 4 Recitals & §§ 2.b–2.e], Chakra Packaging Supply Agreement [*id.* at 8–9, 13 §§ 1.4, 1.6–1.9, 12.2–12.3], and N2 Pack Canada Packaging Supply Agreement [Doc. 9-1 at 128–29, 133–34 §§ 1.4, 1.6, 1.9–1.10, 11.2–11.3] are overbroad and unenforceable because they seek to protect public patent filings as "confidential information," but N2 Packaging intentionally disclosed the information in the patent filings to the public, and the confidentiality provisions do not contain any exception for public information.

216. Defendants expressly preserve and do not waive any other affirmative defense set forth in Rules 8 and 12 of the Federal Rules of Civil Procedure, which may become evident through discovery or otherwise.

WHEREFORE, the Defendants pray for judgment as follows:

A. That Plaintiff takes nothing by way of the Verified First Amended Complaint;

B. That the Court enter judgment in favor of Defendants and against Plaintiff on any and all claims for relief alleged in the Verified First Amended Complaint;

C. That Defendants be awarded their attorneys' fees and the costs of this suit, together with interest thereon at the highest rate provided by law from the date of entry of judgment until paid in full; and

D. For such other relief as the Court deems just.

## COUNTERCLAIMS OF 1079765 B.C. LIMITED D/B/A N2 PACK CANADA, INC., ERIC MARCINIAK, BRENDAN POGUE, ALEX ABELLAN, AND CHAKRA CANNABIS CORP.

Counterclaimants 1079765 B.C. Limited d/b/a N2 Pack Canada, Inc. ("N2 Pack

Canada"), Eric Marciniak, Brendan Pogue, Alex Abellan, and Chakra Cannabis Corp. ("Chakra") (collectively "Counterclaimants"), by and through undersigned counsel, for their Counterclaims against N2 Packaging Systems, LLC ("N2 Packaging" or "Counterdefendant"), hereby allege as follows:

## PARTIES

1. N2 Pack Canada is a corporation incorporated under the laws of British Columbia, Canada with its principal place of business in British Columbia.

2. Eric Marciniak is, and at all relevant times was, a resident of British Columbia, Canada.

3. Brendan Pogue is, and at all relevant times was, a resident of British Columbia, Canada.

4. Alex Abellan is, and at all relevant times was, a resident of British Columbia, Canada.

5. Chakra Cannabis Corp. is a Canadian federal corporation.

6. N2 Packaging is an Arizona limited liability company doing business in Maricopa County, Arizona and in Idaho.

7. Upon information and belief, N2 Packaging has three members: (1) Martin Holdings Corp.; (2) Dave Sibley; and (3) Win Investment Group, LLC.

8. Upon information and belief, Martin Holdings Corp. is incorporated under the laws of Idaho and has its principal place of business in Idaho.

9. Upon information and belief, Dave Sibley is, and at all relevant times was, either a resident of Idaho or California.

10. Upon information and belief, Win Investment Group, LLC is an Idaho limited liability company doing business in Idaho.

11. Upon information and belief, Win Investment Group, LLC has four members: (1) Mike Standlee; (2) Bobby Delgado; (3) 3M Investment Group, LLC; and (4) Skylar Jessen.

12. Upon information and belief, Mike Standlee is, and at all relevant times was,

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

either a resident of Idaho or Arizona.

13.     Upon information and belief, Bobby Delgado is, and at all relevant times was, a resident of Idaho.

14.     Upon information and belief, 3M Investment Group, LLC is an Idaho limited liability company doing business in Idaho.

15.     Upon information and belief, Skylar Jessen is, and at all relevant times was, a resident of Idaho or Arizona.

16.     Upon information and belief, 3M Investment Group, LLC has three members: (1) Dusty Standlee; (2) William "Billy" Salts; and (3) Scott E. Plew.

17.     Upon information and belief, Dusty Standlee is, and at all relevant times was, a resident of Idaho.

18.     Upon information and belief, William "Billy" Salts is, and at all relevant times was, a resident of Idaho.

19.     Upon information and belief, Scott E. Plew is, and at all relevant times was, a resident of Idaho.

**JURISDICTION AND VENUE**

20.     This action arises under 35 U.S.C. § 271, 28 U.S.C. § 2201, and the common law of the state of Arizona.

21.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1338 for claims arising under patent law, and supplemental jurisdiction under 28 U.S.C. § 1367 for the related state-law claims.

22.     This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because this action is between citizens of a State and citizens or subjects of a foreign state, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

23.     This Court has personal jurisdiction over N2 Packaging because N2 Packaging does business in this district and consented to personal jurisdiction by filing the Complaint in this district.

24.     Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b) and (c)

Snell & Wilmer

L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

because N2 Packaging is subject to personal jurisdiction in this district and under 28 U.S.C. § 1400(b) because N2 Packaging has a regular and established place of business in this district.

## THE AGREEMENTS

25.    N2 Packaging and Abellan are parties to an Independent Contractor Agreement (the "Independent Contractor Agreement").

26.    The Independent Contractor Agreement has an effective date of March 28, 2017.  [Doc. 9-2 at 6.]

27.    N2 Packaging and Chakra are parties to a Packaging Supply Agreement (the "Chakra Supply Agreement").

28.    The Chakra Supply Agreement has an effective date of June 27, 2017.  [Doc. 9-2 at 8.]

29.    N2 Packaging and N2 Pack Canada are parties to a Packaging Supply Agreement (the "N2 Pack Canada Supply Agreement").

30.    The N2 Pack Canada Supply Agreement has an effective date of December 22, 2017.  [Doc. 9-1 at 128.]

31.    Pursuant to the terms of the N2 Pack Canada Supply Agreement, N2 Packaging agreed to provide to N2 Pack Canada—on a Preferred Exclusive Basis—its Packaging Process, which allegedly utilizes its Proprietary Process, and to supply N2 Pack Canada with packaging materials.  [*Id*.]

32.    The N2 Pack Canada Supply Agreement defines "Packaging Process" as "the use of the Proprietary Process to seal hermetically Product in a can for distribution and sale to consumers as described in Patent No. US 8,863,947 B2 issued October 21, 2014."  [*Id*. at 129 § 1.6.]

33.    The N2 Pack Canada Supply Agreement defines "Proprietary Process" as "N2 Packaging's patented proprietary process (described in that certain patent issued: Patent No. US 8,863,947 B2 issued October 21, 2014), including, without limitation, any and all modifications, betterments and advancements to said proprietary process, whether or not

patentable." [*Id.* at § 1.9.]

34.     The N2 Pack Canada Supply Agreement defines "Preferred Exclusive Basis" as "[t]he limitation on N2 Packaging to grant in Canada no more than two (2) licenses to use the Packaging Process that utilizes the Proprietary Process." [*Id.* at § 1.7.]

35.     The N2 Pack Canada Supply Agreement also contains the following provision:

> **High Volume Minimum Requirements of Packaging Materials.** [N2 Pack Canada] shall order not less than the number of metal food grade cans (whether of the one-eighth (1/8) ounce size can or of the one-quarter (1/4) ounce size can) in pallet increments to meet or exceed the applicable projection in the projections attached hereto as Attachment D for the sale of Product during the consecutive twelve (12) month period of each term of this Agreement (the "High Volume Minimum Requirement"), which obligation shall survive the termination of this Agreement.  [N2 Pack Canada]'s orders of said packaging materials in excess of the High Volume Minimum Requirement shall be in pallet increments.
>
> In the event [N2 Pack Canada] fails to meet or exceed eighty percent (80%) if the High Volume Minimum Requirement of a consecutive twelve (12) month term of this Agreement, N2 Packaging may, in its sole and absolute discretion, terminate the Preferred Exclusive Basis of this Agreement <u>at the end of such consecutive twelve (12) month term</u>.

[*Id.* at 131 § 6 (underline added).]

36.     The N2 Pack Canada Supply Agreement defines "Product" as "Products using or otherwise involving the Proprietary Process."  [*Id.* at 129 § 1.8.]

37.     The N2 Pack Canada Supply Agreement provides that it "shall be construed and enforced in accordance with the laws of the state of Arizona, without regard to its choice of law provisions."  [*Id.* at 136 § 21.]

**N2 PACK CANADA PERFORMS UNDER**

**THE N2 PACK CANADA SUPPLY AGREEMENT**

38.     As of the N2 Pack Canada Supply Agreement's effective date, the Proprietary Process—in particular the use of nitrogen in the canning of Cannabis—was not approved for use by the Canadian government.

39.     N2 Pack Canada, at its own expense, spent the first seven months after the effective date of the N2 Pack Canada Supply Agreement lobbying the Canadian government to have the Proprietary Process approved for use.

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona  85004-2202
602.382.6000

40.     During this time, in order to comply with the terms of the N2 Pack Canada Supply Agreement [Doc. 9-1 at 129–31, 139 §§ 2, 4–8 & Attachment A], N2 Pack Canada placed an order for certain packaging equipment and materials from N2 Packaging.

41.     On March 12, 2018, N2 Packaging provided N2 Pack Canada with an estimate totaling $538,036.20 USD for packaging equipment and materials.

42.     On April 3, 2018, N2 Pack Canada paid N2 Packaging $269,000 USD as partial payment for the estimate that N2 Packaging had provided on March 12, 2018.

43.     During this time, N2 Pack Canada also placed an order pursuant to the N2 Pack Canada Supply Agreement related to Truro Herbal Co.

44.     During this time, N2 Pack Canada presented to N2 Packaging another opportunity pursuant to the N2 Pack Canada Supply Agreement related to Cannabis West Development.

45.     The orders N2 Pack Canada obtained from Truro Herbal Co. and Cannabis West Development would have met or exceeded the High Volume Minimum Requirement set forth in Section 6 of the N2 Pack Canada Supply Agreement.

### N2 PACKAGING'S WRONGFUL CONDUCT

46.     Despite N2 Pack Canada's payment of $269,000 to N2 Packaging, the packaging equipment and materials listed on the estimate were never delivered.

47.     N2 Packaging also refused to fulfill N2 Pack Canada's order related to Truro Herbal Co., and upon information and belief, attempted to cut N2 Pack Canada out of the deal so that it could sell Product directly to and/or license the Proprietary Process directly to Truro Herbal Co.

48.     N2 Packaging also attempted to cut N2 Pack Canada out of the deal with Cannabis West Development.

49.     N2 Packaging further used Abellan's customs number to ship a legitimate machine to Chakra, while, without disclosing to Counterclaimants, using Abellan's customs number to ship an illegitimate machine to a third-party.

50.     On September 19, 2018, after N2 Pack Canada was able to have the

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

Proprietary Process approved in Canada, N2 Packaging notified N2 Pack Canada that it was terminating the Preferred Exclusive Basis under the N2 Pack Canada Supply Agreement.

51.     Although the September 19, 2018 notification stated that the termination was not effective until December 23, 2018, N2 Packaging did not give N2 Pack Canada the opportunity to cure or to otherwise perform under Section 6 of the N2 Pack Canada Supply Agreement.

52.     N2 Packaging's termination of N2 Pack Canada's Preferred Exclusive Basis under the N2 Pack Canada Supply Agreement before the consecutive twelve-month term ended on December 22, 2018 was a material breach of the N2 Pack Canada Supply Agreement.

53.     On information and belief, N2 Packaging did not intend to perform under the N2 Pack Canada Supply Agreement and intended to breach the N2 Pack Canada Supply Agreement once N2 Pack Canada was able to get the Proprietary Process approved in Canada.

54.     On information and belief, N2 Packaging terminated N2 Pack Canada's Preferred Exclusive Basis under the N2 Pack Canada Supply Agreement so that it could grant other Canadian entities licenses to use the Proprietary Process in Canada.

## COUNTERCLAIM I

### (Breach of Contract)

55.     Counterclaimants hereby reallege and incorporate by reference the preceding paragraphs of this Counterclaim as though fully set forth herein.

56.     N2 Packaging is a party to and executed the N2 Pack Canada Supply Agreement.

57.     N2 Pack Canada is a party to and executed the N2 Pack Canada Supply Agreement.

58.     The N2 Pack Canada Supply Agreement has an effective date of December 22, 2017.

59.     Before N2 Packaging's prior material breach, the N2 Pack Canada Supply

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

Agreement was a valid and enforceable contact.

60.     N2 Pack Canada fulfilled all its obligations under the N2 Pack Canada Supply Agreement.

61.     All conditions required by the N2 Pack Canada Supply Agreement for N2 Packaging's performance occurred.

62.     N2 Packaging materially breached the N2 Pack Canada Supply Agreement, including but not limited to Sections 2, 4–10, by failing to have the packaging equipment and materials listed on the estimate delivered.

63.     N2 Packaging materially breached Section 6 of the N2 Pack Canada Supply Agreement by terminating N2 Pack's Preferred Exclusive Basis before the consecutive twelve-month term ended on December 22, 2018.

64.     As a direct and proximate result of N2 Packaging's material breaches of the N2 Pack Canada Supply Agreement, N2 Pack Canada has suffered and will continue to suffer damages in an amount to be determined at trial, but no less than $269,000.

65.     Section 23 of the N2 Pack Canada Supply Agreement provides that "[i]n the event any party to the Agreement is required to institute legal proceedings to enforce the terms of this Agreement, the prevailing party in such legal proceeding shall be entitled to an award of all reasonable attorney fees and costs incurred at all stages of such legal proceeding, including any appeal therefrom." [Doc. 9-1 at 136 § 23.]

66.     N2 Pack is entitled to recover its attorneys' fees and costs pursuant to the terms of the N2 Pack Canada Supply Agreement and Arizona law. [*See id.*] A.R.S. § 12-341; A.R.S. § 12-341.01.

## COUNTERCLAIM II

### (Breach of The Implied Covenant of Good Faith & Fair Dealing)

67.     Counterclaimants hereby reallege and incorporate by reference the preceding paragraphs of this Counterclaim as though fully set forth herein.

68.     N2 Packaging is a party to and executed the N2 Pack Canada Supply Agreement.

4816-7090-0648

69. N2 Pack Canada is a party to and executed the N2 Pack Canada Supply Agreement.

70. The N2 Pack Canada Supply Agreement has an effective date of December 22, 2017.

71. Before N2 Packaging's prior material breach, the N2 Pack Canada Supply Agreement was a valid and enforceable contact.

72. N2 Pack Canada fulfilled all of its obligations under the N2 Pack Canada Supply Agreement.

73. All conditions required by the N2 Pack Canada Supply Agreement for N2 Packaging's performance have occurred.

74. N2 Packaging unfairly interfered with N2 Pack Canada's right to receive the benefits of the N2 Pack Canada Supply Agreement.

75. In entering into the N2 Pack Canada Supply Agreement, N2 Packaging represented to N2 Pack Canada that it would supply N2 Pack Canada with packaging equipment and materials so that N2 Pack Canada could perform under the N2 Pack Canada Supply Agreement.

76. But instead, upon information and belief, N2 Packaging failed to deliver the packaging equipment and materials listed on the estimate.

77. In entering into the N2 Pack Canada Supply Agreement, N2 Packaging also represented to N2 Pack Canada that it would have a Preferred Exclusive Basis, as defined by the N2 Pack Canada Supply Agreement, for at least twelve consecutive months.

78. But instead, upon information and belief, N2 Packaging refused to fulfill N2 Pack Canada's orders under the N2 Pack Canada Supply Agreement and worked instead with other Canadian entities, granting those entities licenses to use the Proprietary Process in Canada.

79. Upon information and belief, N2 Packaging intended only for N2 Pack Canada, at its own expense, to get the Proprietary Process approved in Canada and did not intend to perform under the N2 Pack Canada Supply Agreement.  N2 Packaging did not

Snell & Wilmer

L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona  85004-2202
602.382.6000

disclose this intent to N2 Pack Canada before entering the N2 Pack Canada Supply Agreement.

80.     As a proximate result of N2 Packaging's improper and wrongful actions, N2 Pack Canada has suffered and will continue to suffer damages in an amount to be determined at trial, but no less than $269,000.

81.     Section 23 of the N2 Pack Canada Supply Agreement provides that "[i]n the event any party to the Agreement is required to institute legal proceedings to enforce the terms of this Agreement, the prevailing party in such legal proceeding shall be entitled to an award of all reasonable attorney fees and costs incurred at all stages of such legal proceeding, including any appeal therefrom."  [Doc. 9-1 at 136 § 23.]

82.     N2 Pack is entitled to recover its attorneys' fees and costs pursuant to the terms of the N2 Pack Canada Supply Agreement and Arizona law.  [*See id.*] A.R.S. § 12-341; A.R.S. § 12-341.01.

## COUNTERCLAIM III

### (Declaration of Non-Infringement of U.S. Patent 8,863,947)

83.     Counterclaimants hereby reallege and incorporate by reference the preceding paragraphs of this Counterclaim as though fully set forth herein.

84.     N2 Packaging alleges that Abellan breached the Independent Contractor Agreement by "conspiring . . . to . . . infringe[] upon N2 Packaging's Intellectual Property, . . . and misappropriate N2 Packaging's Intellectual Property and Proprietary Process . . . ." [Doc. 9 at 24–25 ¶ 133.]

85.     The Independent Contractor Agreement defines "Proprietary Process" as "a patented proprietary process described in that certain patent issued: Patent No. US 8,863,947 B2, issued October 21, 2014 to include, without limitation, any and all modifications, betterments, augmentations and advancements to said proprietary process, whether or not patentable[.]"  [Doc. 9-2 at 2 (Recital 1).]

86.     The Independent Contractor Agreement does not define the term Intellectual Property.

4816-7090-0648

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

87.     The Independent Contractor Agreement does not include any patent registration number other than U.S. Patent 8,863,947.

88.     N2 Packaging alleges that Chakra breached the Chakra Packaging Supply Agreement by "utilizing and misappropriating N2 Packaging's Intellectual Property and Proprietary Process[.]"  [Doc. 9 at 26–27 ¶ 145.]

89.     The Chakra Supply Agreement defines "Proprietary Process" as "N2 Packaging's patented proprietary process (described in that certain patent issued: Patent No. US 8,863,947 B2 issued October 21, 2014), including, without limitation, any and all modifications, betterments and advancements to said proprietary process, whether or not patentable."  [Doc. 9-2 at 9 § 1.8.]

90.     The Chakra Supply Agreement does not define the term Intellectual Property.

91.     The Chakra Supply Agreement does not include any patent registration number other than U.S. Patent 8,863,947.

92.     N2 Packaging alleges that N2 Pack Canada, Marciniak, Pogue, and Abellan breached the N2 Pack Canada Supply Agreement "by facilitating and/or working in conjunction with Truro, DOES 1-10, Conspirators and Nitrotin to misappropriate and infringe upon N2 Packaging's Intellectual Property and Proprietary Process [.]"  [Doc. 9 at 22–23 ¶ 121.]

93.     The N2 Pack Canada Supply Agreement defines "Proprietary Process" as "N2 Packaging's patented proprietary process (described in that certain patent issued: Patent No. US 8,863,947 B2 issued October 21, 2014), including, without limitation, any and all modifications, betterments and advancements to said proprietary process, whether or not patentable."  [Doc. 9-1 at 129 § 1.9.]

94.     The N2 Pack Canada Supply Agreement does not define the term Intellectual Property.

95.     The N2 Pack Canada Supply Agreement does not include any patent registration number other than U.S. Patent 8,863,947.

96.     In the First Amended Complaint, N2 Packaging purports to have protectible

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona  85004-2202
602.382.6000

patent rights in only three USPTO patents—U.S. Patents 8,863,947, 9,878,821, and 10,124,941.  [Doc. 9 at 5–8 ¶¶ 26, 29, 32, 35, 37 n.1, 39.]

97.     U.S. Patents 9,878,821 and 10,124,941 were issued after the Independent Contractor Agreement's effective date, March 28, 2017, the Chakra Supply Agreement's effective date, June 27, 2017, and the N2 Pack Canada Supply Agreement's effective date, December 22, 2017.  [*Id.* at 6–7 ¶¶ 29, 35; Doc. 9-2 at 6 & 8; Doc. 9-1 at 128.][2]

98.     There exists an actual, ripe and justiciable controversy between Counterclaimants and N2 Packaging regarding Counterclaimants' alleged infringement of N2 Packaging's alleged rights in U.S. Patent 8,863,947.

99.     Counterclaimants have not made, used, sold, offered for sale within, or imported into the United States any product or process, let alone any patented invention.

100.    Pursuant to 28 U.S.C. § 2201, the Court should declare that Counterclaimants have not infringed U.S. Patent 8,863,947.

101.    This is an exceptional case under 35 U.S.C. § 285 entitling Counterclaimants to an award of their reasonable attorneys' fees, because N2 Packaging knows Counterclaimants have not performed any action in the United States that is a prerequisite to a claim of patent infringement.

## **COUNTERCLAIM IV**

### **(Declaration of No Confidential Information or Trade Secret in Published Patent and/or Patent Application)**

102.    Counterclaimants hereby reallege and incorporate by reference the preceding paragraphs of this Counterclaim as though fully set forth herein.

103.    N2 Packaging alleges that Abellan an breached the Independent Contractor

---

[2]     Because U.S. Patents 9,878,821 and 10,124,941 issued after the Independent Contractor Agreement, Chakra Supply Agreement, and N2 Pack Canada Supply Agreement were executed, there could have been no meeting of the minds as to these patents, and thus they are not part of the Independent Contractor Agreement, Chakra Supply Agreement, and N2 Pack Canada Supply Agreement.  However, if the Court determines that these patents are encompassed within the definition of "Proprietary Process" set forth in the Independent Contractor Agreement, Chakra Supply Agreement, and N2 Pack Canada Supply Agreement, Counterclaimants reserve the right to amend these Counterclaims to seek declaratory relief as to the non-infringement of U.S. Patents 9,878,821 and 10,124,941.

4816-7090-0648

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

Agreement "improperly disclosing to Defendants and the Conspirators confidential information regarding N2 Packaging's Intellectual Property and Proprietary Process[.]" [Doc. 9 at 25 ¶ 136.]

104.    The Independent Contractor Agreement defines "Proprietary Process" as "a patented proprietary process described in that certain patent issued: Patent No. US 8,863,947 B2, issued October 21, 2014 to include, without limitation, any and all modifications, betterments, augmentations and advancements to said proprietary process, whether or not patentable[.]"  [Doc. 9-2 at 2 (Recital 1).]

105.    N2 Packaging alleges that Chakra breached the Chakra Supply Agreement by "unlawfully disclosing confidential, proprietary and trade secret information regarding N2 Packaging's Intellectual Property and Proprietary Process[.]"  [Doc. 9 at 28 ¶ 149.]

106.    The Chakra Supply Agreement defines "Proprietary Process" as "N2 Packaging's patented proprietary process (described in that certain patent issued: Patent No. US 8,863,947 B2 issued October 21, 2014), including, without limitation, any and all modifications, betterments and advancements to said proprietary process, whether or not patentable."  [Doc. 9-2 at 9 § 1.8.]

107.    N2 Packaging alleges that N2 Pack Canada, Marciniak, Pogue, and Abellan breached the N2 Pack Canada Supply Agreement "by disclosing, sharing and/or otherwise disseminating confidential information and trade secrets relating to N2 Packaging's Intellectual Property and Proprietary Process [.]"  [Doc. 9 at 23 ¶ 126.]

108.    The N2 Pack Canada Supply Agreement defines "Proprietary Process" as "N2 Packaging's patented proprietary process (described in that certain patent issued: Patent No. US 8,863,947 B2 issued October 21, 2014), including, without limitation, any and all modifications, betterments and advancements to said proprietary process, whether or not patentable."  [Doc. 9-1 at 131 § 1.9.]

109.    In the First Amended Complaint, N2 Packaging purports to have protectible intellectual property rights in only U.S. Patents 8,863,947, 9,878,821, and 10,124,941, and the First Amended Complaint also lists U.S. Patent Application No. 15/616,483, and WIPO

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona  85004-2202
602.382.6000

International Publication No. WO 2016/069304.  [Doc. 9 at 5–8 ¶¶ 26, 29, 32, 35, 37 n.1, 39.]

110.    There exists an actual, ripe and justiciable controversy between Counterclaimants and N2 Packaging regarding whether U.S. Patent 8,863,947, U.S. Patent 9,878,821, U.S. Patent 10,124,941, U.S. Patent Application No. 15/616,483, and WIPO International Publication No. WO 2016/069304 include any confidential information or trade secrets.

111.    The Defend Trade Secrets Act defines a trade secret as "all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if— (A) the owner thereof has taken reasonable measures to keep such information secret; and (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information[.]"  18 U.S.C. § 1839(3) (emphasis added).

112.    Arizona law defines a trade secret as "information, including a formula, pattern, compilation, program, device, method, technique or process, that both: (a) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use[ and] (b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy."  A.R.S. § 44-401(4) (emphasis added).

113.    The word confidential is defined as "private" or "secret."  *See* https://www.merriam-webster.com/dictionary/confidential.

114.    U.S. Patent 8,863,947 was published on May 15, 2012 and is publicly available through the USPTO's website.

115.    U.S. Patent 9,878,821 was published on April 21, 2016 and is publicly

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

available through the USPTO's website.

116.   U.S. Patent 10,124,941 was published on May 31, 2018 and is publicly available through the USPTO's website.

117.   U.S. Patent Application Number 15/616,483 was published on December 14, 2017 and is publicly available through the USPTO's website.

118.   WIPO International Publication No. WO 2016/069304 was published on June 5, 2016 and is publicly available through the WIPO's website.

119.   N2 Packaging inserted U.S. Patent 8,863,947, U.S. Patent 9,878,821, U.S. Patent 10,124,941, and WIPO International Publication No. WO 2016/069304 into the public record by attaching them to the First Amended Complaint.  [Doc. 9-1 at 2–126.]

120.   Pursuant to 28 U.S.C. § 2201, the Court should declare that any information in U.S. Patent 8,863,947, U.S. Patent 9,878,821, U.S. Patent 10,124,941, U.S. Patent Application Number 15/616,483, and WIPO International Publication No. WO 2016/069304 (the "Public Information") is neither confidential nor a trade secret.

121.   Pursuant to 28 U.S.C. § 2201, the Court should declare that N2 Packaging's Intellectual Property, Packaging Process, and Proprietary Process do not include the Public Information.

## **PRAYER FOR RELIEF**

122.   WHEREFORE, Counterclaimants pray for judgment in its favor and against N2 Packaging, and the following relief:

A.   For N2 Packaging to pay compensatory damages resulting from its wrongful conduct in an amount to be determined at trial, but no less than $269,000;

B.   For a declaration that Counterclaimants have not infringed U.S. Patent 8,863,947;

C.   For a declaration that any information in U.S. Patent 8,863,947, U.S. Patent 9,878,821, U.S. Patent 10,124,941, patent application number 15/616,483, and WIPO International Publication No. WO 2016/069304 (i) is not confidential or a trade secret, and (ii) is not part of N2 Packaging's Intellectual

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona  85004-2202
602.382.6000

1    Property, Packaging Process, or Proprietary Process;

2    D.    For Counterclaimants' reasonable costs and attorneys' fees pursuant to

3    Section 6 of the N2 Pack Canada Supply Agreement, A.R.S. § 12-341, and

4    A.R.S. § 12-341.01;

5    E.    For an award of Counterclaimants' reasonable attorneys' fees under 35 U.S.C.

6    § 285;

7    F.    For an award of pre- and/or post-judgment interest at the highest rate

8    allowable by law; and

9    G.    For such other relief as the Court deems just and proper.

10    **<u>DEMAND FOR JURY TRIAL</u>**

11    Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Counterclaimants

12 hereby demand a jury trial on all issues in this litigation that are triable to a jury.

13

14    DATED this 8th day of November, 2019.

15    SNELL & WILMER L.L.P.

16

17    By: s/ *Rachael Peters Pugel*

18    Robert A. Henry

19    David G. Barker
Rachael Peters Pugel
One Arizona Center

20    400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202

21

22    *Attorneys for Defendants and
Counterclaimants 1079765 B.C.
Limited d/b/a N2 Pack Canada, Inc.,*

23    *Eric Marciniak, Brendan Pogue, Alex
Abellan, and Chakra Cannabis Corp.*

24

25

26

27

28

Snell & Wilmer L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I hereby certify that on November 8, 2019 I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing, which transmitted notice of the filing to all counsel of record.

s/ *Cheri Zwijacz*

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

4816-7090-0648