**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| N2 Packaging Systems, LLC, an Arizona limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>N2 Pack Canada Inc., an unincorporated fictitious entity; Eric Marciniak, individually; Brendan Pogue, individually; Alejo Abellan aka Alex Abellan, individually; Chakra Cannabis Corp., a Canadian federal corporation; and DOES 1-10, inclusive,<br><br>Defendants. | No. CV-19-02351-PHX-NVW<br><br><br><br>**ORDER** |
| 1079765 B.C. Limited d/b/a N2 Pack Canada, Inc., a British Columbia entity; Eric Marciniak; Brendan Pogue; Alejo Abellan aka Alex Abellan; Chakra Cannabis Corp., a Canadian federal corporation,<br><br>Counterclaimants,<br><br>v.<br><br>N2 Packaging Systems, LLC, an Arizona limited liability company,<br><br>Counter-defendant. | |

Before the Court are Plaintiff and Counter-defendant N2 Packaging Systems, LLC's Motion for Leave to Amend First Amended Complaint (Doc. 72) and the opposition of Defendants and Counterclaimants Eric Marciniak, Brendan Pogue, Alejo Abellan aka Alex Abellan, and Chakra Cannabis Corp., and of Counterclaimant 1079765 B.C. Limited d/b/a N2 Pack Canada, Inc. (Doc. 73). The motion will be denied.

## I.  BACKGROUND

N2 Packaging alleges it has a proprietary process for packaging certain controlled substances (the Proprietary Process). This litigation concerns an alleged scheme among Defendants and a nonparty to misappropriate the Proprietary Process.

### A.  Procedural History

N2 Packaging brought the Original Complaint on February 22, 2019 in the Arizona Superior Court in and for Maricopa County alleging claims against N2 Pack, Marciniak, Pogue, Abellan (the Original Defendants) and fictitious parties for (1) breach of contract, (2) breach of the implied covenant of good faith and fair dealing, (3) alter ego, (4) patent infringement, (5) inducement of patent infringement abroad, (6) violation of Section 43(a) of the Lanham Act, and (7) violation of A.R.S. § 44-1522. The action was removed to this Court.

Eight days later, N2 Packaging filed the First Amended Complaint and a motion to remand. The First Amended Complaint (1) added Chakra as a defendant, (2) added breach of contract claims against Abellan and Chakra, (3) added a claim for tortious interference with contract against Abellan, (4) added a fraud in the inducement claim against Abellan, (5) added a fraud in the inducement claim against Abellan, Marciniak, and Pogue, and (6) added a punitive damage claim. Notably, it also attempted to remove the patent claims and the Lanham Act claim.

N2 Packaging argued for remand under an exclusive forum selection clause in the N2 Pack Canada Supply Agreement. The Court denied remand because the First Amended Complaint, in substance, retained N2 Packaging's patent infringement claims, over which federal courts have exclusive jurisdiction. While N2 Packaging purported to delete the

patent infringement claims, it relabeled the patents as "intellectual property" and alleged them in detail.

Defendants also moved to dismiss the First Amended Complaint for lack of personal jurisdiction over Marciniak and Pogue and failure to state a claim for alter ego, punitive damages, and A.R.S. § 44-1522, the latter of which N2 Packaging withdrew. The motion was denied because Marciniak and Pogue were personally bound by the consent to personal jurisdiction in Arizona in the Supply Agreement. Though they signed the Supply Agreement in the name of N2 Pack, they never formed it and were therefore individually bound by that contract under promoter liability. Arizona personal jurisdiction over Marciniak and Pogue flows from their consent in the Supply Agreement.

On November 8, 2019, Defendants answered the First Amended Complaint and, along with B.C. Limited, pleaded counterclaims against Plaintiff for (1) breach of contract, (2) breach of the implied covenant of good faith and fair dealing, (3) a declaration of non-infringement of United States Patent No. 8,863,947, and (4) a declaration of no confidential information or trade secret in published patent and/or patent application.

Discovery, however, was already underway. The parties exchanged disclosures that "may be relevant to any party's claims or defenses." (Doc. 4 at 7.) On December 20, 2019, Defendants served discovery requests on N2 Packaging. Supplemental disclosures were served by all parties in January and February 2020.

At the case management conference on February 6, 2020, N2 Packaging stated it would likely move to file another amended complaint to "clarify the claims and the facts of which each arise." (Doc. 67 at 17:4.) The case management order set March 6, 2020 as the deadline for filing a motion for leave to amend, August 28, 2020 for completion of fact discovery, and November 20, 2020 for completion of expert discovery. N2 Packaging moved to file the proposed Second Amended Complaint.

### B. The Second Amended Complaint

The Second Amended Complaint again aims to transform this case. It would "clarify the factual basis for causes of action previously stated," add Nitrotin, Inc., as an

additional defendant, and "assert additional causes of action against Nitrotin relating to Nitrotin's misappropriation of N2 Packaging's trade secrets and confidential information." (Doc. 72 at 2.)  But the Second Amended Complaint would do much more.  It would also (1) convert the tortious interference with contract claim against Abellan into tortious interference with business expectancy claim against Abellan, Marciniak, and Pogue, (2) convert the fraud in the inducement claim against Abellan into a fraud claim, (3) convert the fraud in the inducement claim against Abellan, Marciniak, and Pogue into a fraud claim, and (4) add one trade secret misappropriation claim under the federal Defend Trade Secrets Act and another under the Arizona Uniform Trade Secrets Act.

This addition of two trade secret claim shows how substantially the Second Amended Complaint departs from the first.  N2 Packaging (1) removes most of the contentions regarding its patents, including all of the patent descriptions, (2) adds sections titled "Plaintiff's Equipment Trade Secrets" and "Confidential Information under the N2 Canada Supply Agreement," and (3) adds two sections concerning Nitrotin's conduct.  Many of the allegations, including those in support of the legacy causes of action, reflect the assets that are now centerstage, N2 Packaging's "Confidential Information."  (*See, e.g.*, Doc. 72-1 at ¶¶ 201-02.)

## II.     DISCUSSION

"The court should freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  This policy is applied with "extreme liberality."  *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001).[1]  However, leave "is not to be granted automatically."  *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 738 (9th Cir. 2013).  Five factors are to be considered on whether to grant leave to amend: "undue delay, the movant's bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility."  *Brown v. Stored Value Cards, Inc.*, 953 F.3d 567, 574 (9th Cir. 2020) (citing *Foman v.*

---

[1] Unless otherwise indicated, in citing cases, all internal alterations, emphases, footnotes, quotation marks, and citations are omitted.

*Davis*, 371 U.S. 178, 182 (1962)). While prejudice carries the most weight, *id.*, "the court's discretion to deny such leave is particularly broad where the plaintiff has previously amended its complaint." *Ecological Rights Found. v. Pac. Gas and Elec. Co.*, 713 F.3d 502, 520 (9th Cir. 2013).

First, Defendants say N2 Packaging, having already amended their pleading once, unduly delayed in raising its new allegations and amending a second time would prejudice them. Second, they say amendment would be futile, as Nitrotin is not subject to personal jurisdiction in Arizona. Both objections are well taken.

### A.  Undue Delay and Prejudice

Prejudice is the "touchstone of the inquiry under rule 15(a)," and absent prejudice or a strong showing of the remaining factors, "there exists a presumption under Rule 15(a) in favor of granting leave to amend." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). This is not to say the other factors are unimportant— particularly delay. *See Lockheed Martin Corp. v. Network Sols., Inc.*, 194 F.3d 980, 986 (9th Cir. 1999) ("Although delay is not a dispositive factor in the amendment analysis, it is relevant, especially when no reason is given for the delay."). For instance, one type of prejudice is "the burden of necessary future discovery." *See Jackson v. Bank of Haw.*, 902 F.2d 1385, 1387-88 (9th Cir. 1990); *see also Priddy v. Edelman*, 883 F.2d 438, 447 (6th Cir. 1989) ("Putting the defendants through the time and expense of continued litigation on a new theory, with the possibility of additional discovery, would be manifestly unfair and unduly prejudicial."). This type of prejudice can result from a delayed motion for leave to amend. *See, e.g.*, *Lockheed Martin*, 194 F.3d at 986 ("A need to reopen discovery and therefore delay the proceedings supports a district court's finding of prejudice from a delayed motion to amend the complaint."). In addition, even if a delayed motion for leave is made well before the close of discovery, opposing parties can still be prejudiced by having to scramble to address new theories and allegations and resultingly incur high, additional litigation costs that could have been avoided had the moving party pursued such theories and allegations in its original complaint. *See AmerisourceBergen Corp. v.*

*Dialysist W., Inc.*, 465 F.3d 946, 953-54 (9th Cir. 2006) (finding the district court did not abuse its discretion in denying a motion for leave to amend when the motion was made with eight months of discovery remaining).

In evaluating undue delay, the court should inquire "whether the moving party knew or should have known the facts and theories raised by the amendment in the original pleading." *Id.* at 953. Whether a motion to amend is filed within the time allowed by a scheduling order is not dispositive. *Id.* at 952-53.

N2 Packaging's new allegations concerning Defendants are untimely and would prejudice Defendants and B.C. Limited. The Second Amended Complaint was proposed thirteen months into this lawsuit and is based on facts known or knowable to N2 Packaging in February 2019. Indeed, N2 Packaging already alleged Defendants "misappropriated confidential information and trade secrets from Plaintiff to Nitrotin." (Doc. 72 at 2.) Moreover, the First Amended Complaint is replete with allegations regarding the conduct that is now being given a new legal sheen—Defendants' creation of Nitrotin and Nitrotin's successful attempts to pass off N2 Packaging's packaging systems as its own. (*See generally* Doc. 9 at ¶¶ 92-116.)

That new legal sheen would transform this case. Though N2 Packaging contends the Second Amended Complaint would merely "clarify the allegations" in the First Amended Complaint and not introduce "new concepts to this litigation," it would change the rights on which many of N2 Packaging's claims are based. Indeed, numerous contract-based claims in the First Amended Complaint are founded on Defendants' alleged misappropriation of N2 Packaging's "Intellectual Property"—which is defined as five patents that are detailed therein. (*See* Doc. 9 at ¶¶ 25, 28, 31, 34, 37 n.1, 38.) These claims, notwithstanding their labels, "are rights of action under the patents . . . [that] necessarily require resolution of Plaintiff's patent rights which are necessary elements of express or implied agreements not to infringe the Intellectual Property/Patent rights." *N2 Packaging Sys. LLC v. N2 Pack Canada Inc.*, No. CV-19-02351-PHX-NVW, 2019 WL 8326681, at *1 (D. Ariz. June 12, 2019).

However, the Second Amended Complaint does not mention these patents. Rather, they primarily concern different assets, N2 Packaging's "Confidential Information"[2] (*see, e.g.*, Doc. 72-1 at ¶¶ 201-02), and "trade secret modifications." (Doc. 72-1 at ¶ 36.) For example, while the breach of contract claim in Count 1 of the First Amended Complaint alleges N2 Pack Canada, Abellan, Marciniak, and Pogue breached section 11(1) of the Supply Agreement in part by providing certain individuals and entities "with access to the Proprietary Process and N2 Packaging's Intellectual Property," (*id.* at ¶ 123), that same claim in the Second Amended Complaint does not refer to "Intellectual Property." (*See generally* Doc. 172-1 at ¶¶ 167-76.) Instead, it states N2 Pack Canada, Abellan, Marciniak, and Pogue breached section 11 of the Supply Agreement in part by "improperly disclosing Confidential Information related to the Proprietary Process." (*Id.* at ¶ 172.) These claims are no longer "rights of action under patents." *See N2 Packaging Sys. LLC,* 2019 WL 8326681, at *1.

Further, the Second Amended Complaint would prejudice Defendants and B.C. Limited. They have already spent months conducting discovery on the claims in the First Amended Complaint, as they have propounded their disclosure responses and written discovery. They have also received discovery requests from N2 Packaging. Now, they would be forced to begin discovery on the claims in the Second Amended Complaint with only months to go until the close of discovery. "Justice does not so require[]" forcing them to scramble to address N2 Packaging's latest theory of the case. *See* Fed. R. Civ. P. 15(a)(2).

---

[2] N2 Packaging's "Confidential Information" that was shared with the N2 Canada Defendants include, but is not limited to: the N2 Packaging Equipment Trade Secrets; confidential business leads; information relating to N2 Packaging's manufacturers; policies and procedures; internal product testing and design information; N2 proposed patent modifications, betterments, and improvements; confidential customer information; business plans; business and financial projections; business models; marketing strategies and plans; internal business practices; business contracts and other confidential business documentation; research and development information; consumer survey information; training manuals; confidential vendor information; and confidential compliance documentation.

(Doc. 72-1 at ¶ 89.)

In the Court's discretion and in the detailed context of this litigation, N2 Packaging will be denied leave to amend their allegations regarding Defendants.

### B. Futility

"Where the legal basis for a cause of action is tenuous, futility supports the refusal to grant leave to amend." *Lockheed Martin*, 194 F.3d at 986. "Futility of amendment can, by itself, justify the denial of a motion for leave to amend." *Gonzalez v. Planned Parenthood of L.A.*, 759 F.3d 1112, 1116 (9th Cir. 2014). "[L]eave to amend should be denied as futile only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." *Barahona v. Union Pac. R.R. Co.*, 881 F.3d 1122, 1134 (9th Cir. 2018).

Leave to amend to add claims against Nitrotin must be denied as futile. Allegations in the Second Amended Complaint demonstrate that Nitrotin is subject to jurisdiction in other states and therefore is not subject to personal jurisdiction in this Arizona federal court under Federal Rule of Civil Procedure 4(k)(2).

### 1. Rule 4(k)(2) Does Not Give Jurisdiction Over Nitrotin in Arizona Because Utah and Idaho Courts Have Jurisdiction

Personal jurisdiction can be established under Rule 4(k)(1) or Rule 4(k)(2). Rule 4(k)(1) is not relevant to this case, as Nitrotin is not subject to general or specific jurisdiction in Arizona. But N2 Packaging argues Nitrotin is subject to the jurisdiction of this Court (or any federal district court) under Rule 4(k)(2), which states:

> *Federal Claim Outside State-Court Jurisdiction.* For a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if: (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (B) exercising jurisdiction is consistent with the United States Constitution and laws.

"First, the claim against the defendant must arise under federal law. Second, the defendant must not be subject to the personal jurisdiction of any state court of general jurisdiction. Third, the federal court's exercise of personal jurisdiction must comport with due process." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1159 (9th Cir. 2006). Rule

4(k)(2) "provides for what amounts to a federal long-arm statute in a narrow band of cases in which the United States serves as the relevant forum for a minimum contacts analysis." *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1126 (9th Cir. 2002) (citing Fed. R. Civ. P. 4(k)(2) advisory committee's note to 1993 Amendment). "The due process analysis under Rule 4(k)(2) is nearly identical to traditional personal jurisdiction analysis with one significant difference: rather than considering contacts between the [foreign] entities and the forum state, we consider contacts with the nation as a whole." *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 462 (9th Cir. 2007).

Here, the first and third requirements are not in play. At least one of N2 Packaging's proposed claims against Nitrotin arises under federal law, and Defendants and B.C. Limited do not contest that it would comport with due process for the United States to exercise jurisdiction over that claim against Nitrotin. At issue is the second requirement of Rule 4(k)(2) that the claim against Nitrotin not be within the jurisdiction of any state's courts of general jurisdiction.

The allegations in the Second Amended Complaint itself subject Nitrotin to the personal jurisdiction of Utah and Idaho courts for N2 Packaging's federal claim. N2 Packaging alleges Nitrotin fulfilled an order for a customer in California (Doc. 72-1 at ¶ 162), has solicited a prospective customer in Kentucky (*id.* at ¶ 165), and has installers working in Utah and Idaho (*id.* at ¶ 164). Courts in Utah and Idaho can exercise jurisdiction over Nitrotin because Nitrotin has employees in those states contributing to Nitrotin's misappropriation of N2 Packaging's trade secrets. *See, e.g.*, *Island Tobacco Co. v. R.J. Reynolds Indus., Inc.*, 513 F. Supp. 726, 739 (D. Haw. 1981) ("Personal jurisdiction will be found when foreign corporations have placed their employees within the forum state." (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295 (1980)); *cf. Wood v. Kinetic Sys., Inc.*, No. CV 09-575-S-CWD, 2010 WL 893647, at *6 (D. Idaho Mar. 9, 2010) (finding the defendant "purposefully availed itself of the privilege of

conducting activities in Idaho by hiring an Idaho employee and maintaining the ability to do business as a contractor in Idaho"). It is a closer question whether Nitrotin is subject to jurisdiction in California or Kentucky for the federal claim, but the question need not be answered, given the dispositive allegations regarding Utah and Idaho.

As N2 Packaging's allegations show Nitrotin is subject to the personal jurisdiction of Utah and Idaho courts, Rule 4(k)(2) cannot apply and does not confer jurisdiction over Nitrotin in this federal court or in any federal court. That is the end of the discussion and requires denial of N2 Packaging's attempt to add Nitrotin as a defendant.

### 2. Rule 4(k)(2) Does Not Require an Absent Foreign Defendant to Stipulate to Jurisdiction in Another State to Defeat Jurisdiction in any District under that Rule

That should be the end of the discussion to reject the claim of Rule 4(k)(2) jurisdiction. But more discussion is appropriate to explain the etiology of N2 Packaging's bold contention that the second requirement of Rule 4(k)(2) jurisdiction can be defeated only by the absentee foreign defendant stipulating to jurisdiction in some other state— which, of course, the absentee cannot be compelled to do because it is not currently a party to this proceeding. And since the absentee foreign defendant is never a current party on a motion to add that new defendant, N2 Packaging's contention means that the second requirement of Rule 4(k)(2) jurisdiction can never be defeated and is always established merely by a plaintiff amending to bring in a new foreign defendant. But no rule of law works that way, where one side always wins or loses. It turns out that this rule of law does not work that way either.

The grant of in personam jurisdiction under Rule 4(k)(2) is extremely rare[3] and even more extremely narrow. A plaintiff invoking that jurisdiction must plead facts showing

---

[3] "Indeed, in the fourteen years since Rule 4(k)(2) was enacted, none of our cases has countenanced jurisdiction under the rule." *Holland Am. Line Inc.,* 485 F.3d at 462. *AMA Multimedia LLC v. Wanat*, No. CV-15-01674-PHX-ROS, 2017 WL 5668025, at *5 (D. Ariz. Sept. 29, 2017) ("The situation after 2007 has not changed. The parties have not cited, nor has the Court located, any post-2007 case from the Ninth Circuit allowing jurisdiction under Rule 4(k)(2).")

the foreign defendant and the claim have enough contacts with the United States as a whole that basic fairness allows this country to exercise adjudicatory jurisdiction over the claim and the defendant. But the plaintiff cannot plead—and there cannot be—enough contacts between the claim, the defendant, and the forum for the courts of any particular state to have adjudicatory jurisdiction. It is not logically impossible for such a space to exist, but it is planted around with procedural punji stakes. The slightest short step or overstep is fatal. In this case, N2 Packaging stepped on the punji stakes by pleading bases for jurisdiction in Utah and Idaho, so Nitrotin is subject to jurisdiction in those states but not to nationwide federal court jurisdiction under Rule 4(k)(2).

The unusual character and structure of Rule 4(k)(2) has led to a court-made rule in the Ninth Circuit and elsewhere[4] placing the burden of proof on a foreign defendant who denies Rule 4(k)(2) jurisdiction to identify or stipulate to another state which does have jurisdiction over him. A foreign defendant defeats Rule 4(k)(2) jurisdiction by showing any state has personal jurisdiction. "Ordinarily, the plaintiff bears the burden of proving personal jurisdiction over the defendant. However, proving the lack of personal jurisdiction in every state could be quite onerous, and it is the defendant, not the plaintiff, that likely possesses most of the information to do so." *Holland Am. Line Inc.*, 485 F.3d at 461. Rather than the plaintiff having to show, as under the usual standard of pleading and proof, that none of 50 states has jurisdiction, the foreign defendant can defeat Rule 4(k)(2) jurisdiction in the district of the plaintiff's choice by stating, and thus stipulating, what state does have jurisdiction. This gives the foreign defendant the benefit of not being sued in any of 94 districts of the plaintiff's choice, but it also frees the plaintiff from having to prove personal jurisdiction in the state the foreign defendant has elected:

---

[4] *Holland Am. Line Inc.*, 485 F.3d at 461; *ISI Int'l, Inc. v. Borden Ladner Gervais LLP*, 256 F.3d 548, 552 (7th Cir. 2001); *Adams v. Unione Mediterranea Di Sicurta*, 364 F.3d 646, 651 (5th Cir. 2004); *Mwani v. bin Laden*, 417 F.3d 1, 11 (D.C. Cir. 2005); *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1219 n.22 (11th Cir. 2009); *Touchcom, Inc. v. Bereskin & Parr*, 574 F.3d 1403, 1415 (Fed. Cir. 2009).

> A defendant who wants to preclude use of Rule 4(k)(2) has only to name some other state in which the suit could proceed. Naming a more appropriate state would amount to a consent to personal jurisdiction there . . . . If, however, the defendant contends that he cannot be sued in the forum state and refuses to identify any other where suit is possible, then the federal court is entitled to use Rule 4(k)(2). This procedure makes it unnecessary to traipse through the 50 states, asking whether each could entertain the suit.

*Id.* (This elimination of the second element of Rule 4(k)(2) does not satisfy Rule 4(k)(2) entirely. A foreign defendant can still defeat Rule 4(k)(2) jurisdiction by showing insufficient contacts with the United States as a whole. *Holland Am. Line Inc.*, 485 F.3d at 462.)

N2 Packaging argues the second requirement of Rule 4(k)(2) has been eliminated because Nitrotin has not consented to personal jurisdiction in some other state. If Nitrotin were a party to this action, this burden-shifting rule requiring Nitrotin to name a more appropriate state to blunt the requirement that no other state have jurisdiction still would not apply because, as discussed above, N2 Packaging has already alleged sufficient jurisdiction in Utah and Idaho. But even without N2 Packaging's own fatal allegations, Nitrotin is not an existing party to this case, and the existing parties have no authority or ability to stipulate on Nitrotin's behalf what states have jurisdiction over it.

The Ninth Circuit has never held the court-created burden to "name some other state in which the suit could proceed"—and thereby consent to jurisdiction there—can be placed on a party that cannot do so, who is not a pending party within the jurisdiction of the court. *See id.* at 461. No court has so held. More concretely, no court has ever held that existing parties opposing amendment to add defendants have any burden or authority to stipulate to jurisdiction for absentees they do not represent.

Moreover, even where it applies, the *Holland* rule is not mandatory. The *Holland* test does not require district courts to find the second requirement is satisfied even if a defendant declines to identify an alternative forum. The *Holland* test in part states, "If, however, the defendant contends that he cannot be sued in the forum state and refuses to identify any other state where suit is possible, then the federal court is entitled to use Rule

- 11 -

4(k)(2)." *Id.*; *e.g.*, *Falcon Enters., Inc. v. Centurion Ltd.*, No. C07-0065RSL, 2007 WL 3046201, at *3 (W.D. Wash. Oct. 18, 2007) (finding "the 'is entitled to' language . . . mean[s] what its [sic] says, namely that the Court has the option to presume that nationwide service is appropriate if defendant refuses to identify an alternative forum but that it is not required to do so" and declining to impose Rule 4(k)(2) jurisdiction.)

Finally, N2 Packaging argues "If for any reason the Court finds, at this stage, that it would not have jurisdiction over Nitrotin, ample authority supporting an opportunity to correct the SAC exists." (Doc. 74 at 10 (internal citations omitted).)  However, N2 Packaging keeps it a perfect secret what new allegations it would make to cure the deficiency in its motion and the Second Amended Complaint.  That too is denied.

IT IS THEREFORE ORDERED that Plaintiff and Counter-defendant N2 Packaging Systems, LLC's Motion for Leave to Amend First Amended Complaint (Doc. 72) is denied.

Dated this 15th day of May, 2020.

_____
Neil V. Wake
Senior United States District Judge